HAWTHORNE, Justice
 

 (dissenting).
 

 Margaret Jean and Marjorie Jane Knight, twin girls, aged seven at the time this case was heard in the juvenile court of Caddo Parish, were charged as being neglected
 
 *188
 
 •children by an affidavit of the probation •officer of that parish filed on December 15, 1945, made on information and belief based ■on allegations set forth in an affidavit sworn to by the children’s paternal grandmother, Mrs. Ray Overlees, on December 13, 1945.
 

 According to the testimony, the mother, Mrs. Genevieve Knight, both before and after the death of her husband, who was killed overseas early in 1945, for a period •exceeding one year (except for a short time immediately preceding and following the filing of the affidavits) had frequent social engagements with married men, particularly a fellow employee of the telephone company where Mrs. Knight was employed and a young lieutenant in the Air Corps who was stationed at Barksdale Field. While with these companions, she frequented, as pointed •out in the majority opinion, cocktail bars, night clubs, and amusement resorts, where she and her companions drank intoxicating beverages. This, as pointed out in the majority opinion, she admitted. According to her own admissions, she left the two young children with their paternal grandmother and step-grandfather, at whose home she and the children resided, on an average of four or five nights each week during this period of time. When she was out on her •social engagements, she usually returned in the early hours of the morning, and on occasions did not return to her home at all, being absent therefrom at one time for four or five days and nights. During these periods •of absence her whereabouts was unknown to the paternal grandmother of the children. Mrs. Knight’s explanation, of course, was that she spent the nights which she did not pass at home at the home of her mother or with women friends.
 

 It is apparent from the record that Mrs. Knight’s absences from home were not on infrequent occasions only, but were continuous, evening after evening, over this period of time, and that the two little girls were dependent during the hours of the evening and night upon the paternal grandmother for care and attention, although no special arrangement as to the care of these children during Mrs. Knight’s absences had been made between her and the children’s grandmother, who on many occasions had nó way of knowing how to reach her daughter-in-law in case she needed to do so.
 

 There can therefore be no question that the mother of these children neglected them.
 

 Under this state of facts, the question which next presents -itself to my mind is whether children whose mother habitually and continually neglects them (although their physical well being is looked after by another) are “neglected children” under the provisions of the juvenile act of Caddo Parish. Act No. 30 of 1924.
 

 The judge of the juvenile court found these children to be neglected for the reason that they were “without proper guardianship”. In the majority opinion, this court in dismissing the proceedings and reversing the judgment found that, under the
 
 *189
 
 facts as disclosed by the record and as set forth in the opinion, these children were not neglected under the provisions of the act. In doing so, this court defined the term “proper guardianship” as found in the act, and under this definition concluded that the facts did not justify the judgment of the lower court.
 

 In my opinion, the majority has given a very narrow and strict interpretation to the phrase “pi'oper guardianship”. Even if this definition is correct — and I do not so concede — , I am of the opinion that these children were neglected within the spirit and meaning of the act, and particularly under another definition given in Section 9 thereof, and that the judgment of the lower court is correct and should be affirmed.
 

 Section 11 of Act No. 30 of 1924 provides in part that “* * * All proceedings against ‘neglected’ or ‘delinquent’ children shall be by affidavit made before the clerk of the court or any committing magistrate, by any reputable person, chai-ging the said child with being ‘neglected’ or ‘delinquent,’ and
 
 briefly setting forth in general terms the facts constituting said ‘neglecf or ‘delinquency’,
 
 and when made by the district attorney or the probation officer may be on information or belief.” (All italics mine.)
 

 The affidavit of the probation officer filed in this case was made on infoxmation and belief from the allegations of Mrs. Over-lees’ affidavit, her affidavit being attached to, and by reference made a part of, the probation officer’s affidavit.
 

 In her affidavit, Mrs. Overlees, after charging that these children were neglected children under certain specific provisions of the act, then proceeded to set forth in 10 separate paragraphs the specific facts which, in the opinion of the affiant, made these children neglected children under those provisions. For example, in Paragraphs 1 and 3 she alleged:
 

 “That for a period of approximately two hundred consecutive nights in the latter part of 1944 and in 1945, the said Genevieve Knight did leave her children and spend the night away from home. On these occasions she would leave her home at about 8:00 P.M., in the company of an Army Lieutenant whose name and identity is well known to your affiant and who was himself a married man. She would generally return the next evening in the company of the same Lieutenant, remain a short time and then depart again with the same man.
 

 * * ^ * * #
 

 “That sometimes she would absent herself from her children as long as five consecutive days without seeing them or calling in regard to their welfare.”
 

 These allegations charge Mrs. Knight with neglecting her children, and, from the testimony adduced at the trial, the judge found that she had neglected them. With this in mind, in my opinion this court has ample authority in law, although it may not agree with the judge of the juvenile court that these children were “without proper
 
 *190
 
 guardianship”, to find these children neglected in the event that the evidence in this case justifies such finding under any other provision of the act, if the specific acts charged bring these children within any of the definitions of a “neglected child”, as set forth in Section 9 thereof.
 

 The affidavit having charged certain facts, it then becomes a legal question of whether these facts, if proved, constitute these children neglected within any definition of the term “neglected child” given and set forth in the act, as I do not believe that the strict rules of pleading which are applied to criminal and civil cases should be applicable to the trial of cases in which children are charged as being neglected or delinquent, such proceedings being sui generis.
 

 I am supported in this view by the very terms of the act itself, which provides that
 
 such charges shall set forth in general terms the facts constituting neglect or delinquency,
 
 as quoted hereinabove, and by two decisions of this court which have never been specifically overruled: State v. Johnson, 131 La. 8, 58 So. 1015; In re Owen, 170 La. 255, 127 So. 619.
 

 Section 13 of the act provides: “* * * In the trial of all cases under this Act, all facts connected therewith, and all surrounding circumstances, including the environment and the history of the child, together with any other character of evidence, which the court in its discretion may deem proper, shall be admissible, and the testimony of the probation officer assigned to the case shall be admissible as to the result of his investigation.”
 

 With these provisions of the act before me, I am of the opinion that this court has full authority to find these children neglected if the evidence shows that the children are neglected for any cause enumerated in Section 9 of the act.
 

 Under Section 9 of the act, "The term ‘neglected child’ shall mean any child under seventeen years of age, not now, or hereafter, an inmate of a state institution, * * *
 
 who, in the opinion of the court, is entitled to support or care by its parent or parents, where it appears that the parent or parents are failing or refusing to support or care for said child
 
 * *
 

 To me, the words “support or care” mean more than financial care or providing material things for the children. The words “support” and “care” are used disjunctively, one meaning support in the financial sense and the other the duty of a parent to watch over, to foster, or to guard the moral as well as the physical welfare of the children. Webster’s New International Dictionary, 2d Ed., defines the phase “care for” as “To watch over, foster, or guard; to provide for; to make neat or tidy, as, children well
 
 cared for”.
 

 The majority opinion quotes from the juvenile court act for the Parish of Orleans to support its definition of the phrase “without proper guardianship” in the act for Cad-do Parish. It is noteworthy that, in the
 
 *191
 
 provision of the act for the Parish of •Orleans corresponding to the provision of the act for Caddo Parish under discussion here, “care” is given in specific language a broader meaning than financial care: “The words ‘neglected child’ means a child — ■ * * * Whose parent, tutor, guardian or •other person or agency having care of the person of the child neglects or refuses to provide or avail himself of proper or necessary subsistence, education, medical or surgical care, or
 
 other care necessary for the ■child’s
 
 health,
 
 morals or well-being.”
 
 Act No. 169 of 1944, Section 4 (subd. 9(b).
 

 This, in my opinion, further substantiates my view that “care” in the Caddo Parish act is not restricted to financial or material care.
 

 In the opinion of the trial judge, these ■ehildren were neglected by their mother, as clearly indicated by the facts set forth in his reasons for judgment, and, this being so, I do not think the judgment should be reversed unless there is manifest error in his findings of fact.
 

 In a Note, 19 Tulane Law Review, pages 464, 466, which discussed a recent opinion ■of this court in which the court had the same act under consideration as we have before us in this case, we find the following: “* ' * * The court also attached considerable significance to the fact that the child was living in a good home and was being well cared for when the affidavit charging her with being a neglected child was filed by the grandmother. * * * From what the court said it would seem that no child could ever be adjudged ‘neglected’ in a legal sense unless it were actually in destitute circumstances. This view, it is submitted, completely overlooks the duty owed by
 
 parents to
 
 support and care for their children. Art. 227, La. Civil Code of 1870. It also ignores that portion of Act 30 of 1924 which defines a neglected child as one, who, in the opinion of the court, is entitled to support or care by its parent or parents, where it appears that the parent or parents are failing to support or care for the child. * *
 

 I therefore submit that the proven facts in this case show that these children were neglected children, not only within the general meaning and spirit of the act, but under its specific terms, and, further, that the act should be liberally construed, as set out in the concluding statement of Section 18, as follows: “The provisions of this act shall he liberally construed, to the end that its purposes may be carried out, to wit: That the care and custody and discipline of a child may approximate as nearly as possible that which should be given by an honorable, upright and capable parent.”
 

 After finding, that these children were neglected children by reason of their mother’s neglect, the judge of the juvenile court nevertheless permitted her to retain custody of them, subject to the continued supervision of a probation officer of the juvenile court. I do not find his judgment to be inconsistent. In his reasons for judgment, after having found that the children were neglected under the provision of the
 
 *192
 
 act, the judge stated that: “We believe their welfare would be best served by leaving them in the custody of their mother, who is entitled to them by law of man and nature above all other persons, so long as she conducts herself in a manner fitting motherhood.”
 

 This decision to leave the children with their mother was undoubtedly prompted by the fact that, after the lieutenant left Shreveport, and immediately prior to and during the hearing, her conduct had improved, and she was shown to be caring for the children and to be greatly concerned over the possibility of having them taken away from her. Evidently the judge thought and hoped that Mrs. Knight would continue her reformed conduct. At the time of the trial, she and the children were living with her own mother, whose eyes, said the judge, had been opened to her daughter’s behavior, and who he hoped could either control her daughter’s behavior in the future or would report continued misconduct to the court. In addition, the judge hoped that Mrs. Knight, who had come so near to losing the custody of her children, would be awakened to a full sense of the responsibility of parenthood.
 

 This solution, in my opinion, was commendable on the part of the trial judge, for it shows that he had no desire to punish Mrs. Knight for her neglect of her children, but on the contrary shows that he hoped that she would continue her good conduct and her care of the children which existed at the time of the trial, because he was of the opinion that it was to the best interest of the children to be with, and have the care of, their mother.
 

 I respectfully dissent.